Jeffrey N. HALAS, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

No. 97–CV–83C.

United States District Court,
W.D. New York.

Dec. 12, 1997.

Jeffrey Halas, pro se.

Mayer, Brown & Platt (Gary D. Friedman, of Counsel), New York City, for Defendant.

## DECISION and ORDER

CURTIN, District Judge.

### BACKGROUND

In this employment discrimination action brought under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112–12117, (the "ADA"), Jeffrey N. Halas alleges that Ford Motor Company discriminated against him by failing to accommodate his disability and by forcing or tricking him to resign his production position and subsequently refusing to provide him with a salaried position on account of his disability (Item 1; Item 11, Exhibit I).[1] Defendant has moved to dismiss plaintiff's complaint claiming that plaintiff's claims are time-barred because plaintiff failed to file his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory act (Items 6 and 7). Plaintiff, appearing *pro se*, has moved for appointment of counsel (Items 10 and 16).

Plaintiff was hired by defendant on April 21, 1995, as a part-time employee under a collective bargaining agreement with the United Autoworkers in the classification "Automation Tender—Welding Lines" (Item 1, ¶ 4; Defendant's EEOC response # 1 attached to Item 1). This job classification involved the handling of automotive sheet metal components during production stamping and automated welding operations (Defendant's EEOC response # 1). Plaintiff worked without incident or report of difficul-

ty in performing assigned work until a contractual layoff effective June 12, 1995 (*Id.*). Defendant rehired plaintiff on August 7, 1995, and on August 11, 1995, plaintiff was afforded and accepted full-time work (*Id.*). On August 22, 1995, plaintiff requested reasonable accommodation from defendant due to his disability. Plaintiff claims that in response to this request, defendant offered him a salaried position and instructed that he first had to resign his hourly position. Plaintiff's last day of employment at Ford Motor Company was August 26, 1995. Plaintiff alleges that defendant subsequently refused to provide him with a salaried position. Plaintiff contends that he was tricked into resigning his hourly job by defendant's promises of a salaried position. Defendant claims that plaintiff voluntarily resigned from his production line position and that it never offered plaintiff a salaried position (Defendant's EEOC response # 3).

Plaintiff asserts that he has a hemangeoma (benign vein tumor) on the palm of his left hand. He claims that he suffered this permanent nerve damage while he was serving in the United States Air Force and that he is currently on the disabled veterans list (Item 11, Exhibit A). He submits that he disclosed his disability to defendant on two separate occasions prior to the days immediately preceding his resignation: on the employment application that he filed with the New York State Department of Labor, and during his pre-hire physical with defendant's in-house physician (Item 12, Attachment). Defendant contends that during his four-month employment, plaintiff did not identify himself as a disabled person in need of accommodation, nor were there any reports that plaintiff had physical difficulty performing his work (Defendant's EEOC Response # 1; Item 12, p. 4).

On or around October 1995, plaintiff first contacted the Buffalo Local Office of the EEOC to inquire as to whether he had a viable discrimination claim against defendant.

---

1. In his complaint, plaintiff claims that he is also bringing this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"). In its pending motion to dismiss, defendant correctly notes that disability discrimination is not covered by Title VII and that plaintiff failed to mention Title VII in his EEOC charge. The court suspects that plaintiff inadvertently checked off Title VII as a cause of action in the *pro se* complaint form. Consequently, the court will consider this as an action brought solely under the ADA.

On October 20, 1995, the EEOC sent plaintiff a "New Charge Questionnaire" ("questionnaire") and instructed him to complete it and to return it as soon as possible (Item 12, attachment). The October 20 cover letter from the EEOC explained that a charge of employment discrimination must be filed within 300 days from the date of the alleged violation and that "[c]ompletion of the [enclosed] form does not constitute a valid charge of employment discrimination" (*Id.*). Apparently, plaintiff contacted the EEOC once again some time in early January 1996. On January 9, 1996, the EEOC sent plaintiff another questionnaire, instructed him to complete it and to return it as soon as possible, and repeated the warnings that a charge must be filed within 300 days and that completion of the form does not constitute a valid charge of employment discrimination (*Id.*).

Plaintiff completed the questionnaire and hand-delivered it to the EEOC on June 18, 1996. Plaintiff alleges that when he dropped off the form, EEOC personnel explained to him that by turning in the questionnaire on that date, he satisfied the 300–day requirement (Items 12 and 25). On June 20, 1996, the EEOC sent plaintiff a letter acknowledging plaintiff's "charge of employment discrimination" against defendant (Item 21, attachment). The letter instructed plaintiff to sign, date, and return the enclosed Charge of Discrimination, which was drafted from plaintiff's responses on the questionnaire. The EEOC received plaintiff's signed and dated EEOC Charge on June 25, 1996 (Item 11, Exhibit I).

On January 30, 1997, the EEOC dismissed plaintiff's charge because it found that it lacked jurisdiction to investigate plaintiff's allegations claim since it found that plaintiff's allegations did not involve a disability that is covered by the ADA (Item 1, attachment). In its cover letter, the EEOC explained that:

> Because you were not an individual under the provisions of the [ADA], [defendant] was neither required nor obligated to provide you with your requested accommodation. In regards to you[r] allegation that you were forced to resign your production position and denied a salaried position, the record shows that you voluntarily terminated your employment.

(*Id.*). The EEOC dismissal form instructed plaintiff that he had the right to file a lawsuit against defendant under federal law in either federal or state court (*Id.*).

On February 11, 1997, plaintiff commenced this action. Defendant was served on or about March 17, 1997 (Item 5). On May 7, 1997, defendant brought the pending motion to dismiss for failure to file the EEOC charge within 300 days.

Incidentally, plaintiff presented his claims to the New York State Department of Labor in the context of an unemployment compensation proceeding. On July 18, 1997, the New York State Department of Labor Unemployment Insurance Appeal Board (the "Board") found that the evidence establishes that plaintiff's employment ended because the nature of the production line work aggravated a preexisting disability, and that plaintiff had advised defendant's doctor of his condition (Item 27, attachment). The Board concluded that plaintiff's written statement of August 22, 1995, was an attempt by plaintiff to convey to defendant that he could not perform his job duties due to his disability and to request other duties that would not aggravate his condition. The Board found that plaintiff had good cause to leave his employment and that plaintiff was therefore entitled to unemployment benefits (*Id.*).

## DISCUSSION

### I. Converting Defendant's Motion to a Motion for Summary Judgment

Although defendant's pending motion is a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), both parties have filed additional letters, memoranda, and affidavits to persuade the court to rule on their behalf. "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 International Brotherhood of Electrical Workers*, 905 F.2d 35, 37 (2d Cir.1990). When a court is presented with material outside the pleadings both in support and in opposition to a

12(b)(6) motion, it is required to either exclude the additional material and decide the motion solely based on the complaint, or to convert the motion to one for summary judgment under Fed.R.Civ.P. 56. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988); *Goyette v. DCA Advertising Inc.,* 830 F.Supp. 737, 741 (S.D.N.Y.1993); Fed.R.Civ.P. 12(b). Either the pleader or the moving party may cause the conversion of a motion to dismiss into a motion for summary judgment by submitting extraneous materials. *See Donovan v.. Gingerbread House, Inc.,* 536 F.Supp. 627 (D.C.Colo.1982).

In the months following the filing of defendant's motion, this court was extremely lenient in allowing the parties to submit additional materials before the court considered the motion submitted. Also, on August, 13, 1997, the court held a telephone conference providing the parties with an opportunity to be heard on defendant's motion. The court is satisfied that both sides had the sufficient opportunity to present materials in support of their positions; therefore, the court will consider the additional submissions and treat defendant's motion as a motion for summary judgment.

Summary judgment is appropriate when "there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 710 (2d Cir.1991). When deciding a motion for summary judgment, the court must "resolve all ambiguities and inferences ... in the light most favorable to the party opposing the motion." *Shockley v. Vermont State Colleges,* 793 F.2d 478, 481 (2d Cir.1986) (citations omitted). There is no genuine issue of material fact if, based upon the submissions to the court, no rational factfinder could find in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). It is the function of the court to determine whether there is a genuine issue for trial, not to determine the truth of the matter. *Carter v. Carriero,* 905 F.Supp. 99, 102 (W.D.N.Y.1995) (Skretny, J.). When used properly Rule 56 is a "vital proce-

dural tool to avoid wasteful trials." *Capital Imaging v. Mohawk Valley Medical Associates,* 996 F.2d 537, 541 (2d Cir.1993).

## II. *Satisfaction of the 300–day Filing Requirement*

 It is well-established that "[w]hen a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred." *Butts v. City of New York Dep't of Housing Preservation & Development,* 990 F.2d 1397, 1401 (2d Cir.1993). The ADA provides that in states, such as New York, that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for the filing of a charge of discrimination with the EEOC is 300 days. 42 U.S.C. § 12117(a) (incorporating by reference the procedures set forth under 42 U.S.C. § 2000e–5(e)(1)). Furthermore, the ADA provides that a charge of discrimination shall be made "in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 12117(a) (incorporating by reference the procedures set forth under 42 U.S.C. § 2000e–5(b)). The EEOC regulations further provide that a "charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9.

 The "filing [of] a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). However, plaintiff "bear[s] a heavy burden in establishing that equitable principles should permit the procedural requirements in question to be bypassed." *Crossman v. Crosson,* 905 F.Supp. 90, 93 (E.D.N.Y.1995).

As defendant correctly points out, courts in this circuit have construed the 300–day statute of limitations strictly. *See Trenchfield v. Dupont Photomasks, Inc.,* 1997 WL 53238 (S.D.N.Y.) (dismissing Title VII and ADEA claims as untimely where EEOC charge was filed 338 days after the alleged unlawful employment practice occurred); *Van Zant v. KLM Royal Dutch Airlines,* 870 F.Supp. 572

(S.D.N.Y.1994), *aff'd,* 80 F.3d 708 (2d Cir. 1996) (dismissing sexual harassment and retaliation claims as time-barred where last act of discrimination occurred 315 days before EEOC filing). Defendant argues that many courts have also strictly enforced the statutory oath/verification requirement and have concluded that informal submissions, such as intake questionnaires, are legally insufficient (Item 14, pp. 5–7). *See Park v. Howard University,* 71 F.3d 904, 908–09 (D.C.Cir. 1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 57, 136 L.Ed.2d 20 (1996), quoting *Early v. Bankers Life and Casualty Co.,* 959 F.2d 75, 80 (7th Cir.1992) (" 'To treat Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the prospective defendant, since that is a requirement only of the charge and not of the questionnaire.' "); *Hodges v. Northwest Airlines, Inc.,* 990 F.2d 1030, 1032 (8th Cir. 1993) (holding that an intake questionnaire did not constitute a valid charge under Title VII until the plaintiff signed it under oath).

Defendant notes that a court in the Southern District of New York granted a defendant's motion for summary judgment earlier this year in a Title VII action due to the plaintiff's failure to file a timely EEOC charge. *Hourahan v. Ecuadorian Line Inc.,* 1997 WL 2518 (S.D.N.Y.). The plaintiff alleged that she had had an interview with an employee at the local commission and that she understood from that meeting that an EEOC complaint would be filed on her behalf. *Id.,* at *4–5. Judge Schwartz found that the plaintiff failed to satisfy her burden of showing that equitable tolling should be applied because (1) she did not allege that anyone at the local commission had made any statement that led her to believe that she had done all that was required to file a timely EEOC charge, and (2) she failed to act diligently to inquire whether she had done all she needed to do. *Id.*

Although Judge Schwartz's decision in *Hourahan* is helpful, the circumstances in the present case are distinguishable. First, plaintiff alleges that when he went to the EEOC on June 18, 1996, to return the EEOC questionnaire, Judy Fornalik, an EEOC employee, told him that he was not late in filing his EEOC charge (Items 12 and 25). Second, plaintiff received a letter on June 20, 1996, which acknowledged the filing of his "charge of employment discrimination" (Item 25, attachment). Third, Elizabeth Cadle, the Director of the Buffalo Local Office of the EEOC ("Buffalo Office"), affirms that in cases in which the Buffalo Office did not receive a new charge questionnaire within sufficient time of the applicable 300–day deadline to draft and have the charging party sign a Charge of Discrimination, it was the normal custom and practice of the Buffalo Office to treat the questionnaire as a formal charge in order to ensure the timeliness of the charge (Item 22, ¶ 4). Ms. Cadle further affirms that the Buffalo Office treated Mr. Halas' new charge questionnaire as a formal charge pursuant to its normal custom and practice, and that that document was received 299 days from the date of the alleged harm (*Id.,* ¶ 7). Fourth, the Buffalo Office proceeded to consider plaintiff's claim and on January 30, 1997, notified plaintiff that it was dismissing his claim for lack of jurisdiction and that he had the right to file a lawsuit in either federal or state court (Item 1, attachment). Thus, unlike the circumstances in *Hourahan,* plaintiff has both alleged and proven that EEOC personnel made assurances that because of their own backlog, this timely filing of the intake questionnaire was sufficient for the filing of a timely EEOC charge.

Defendant argues that the fact that the Buffalo Office chose in its administrative discretion to treat plaintiff's intake questionnaire as a formal charge of discrimination and thereby investigate his claim has absolutely no bearing on whether plaintiff may assert the same claim in a civil action (Item 26, p. 2).[2] Defendant submits that it is for the court to decide whether plaintiff satisfied the 300–day statute of limitations and that the Buffalo Office's internal practices and

---

**2.** Defendant also argues that the Buffalo Office did not in fact treat plaintiff's questionnaire as the formal charge (Item 26, p. 3). Because the court must draw all reasonable inferences in favor of the non-moving party and because Ms. Cadle has stated to the contrary, the court hereby rejects defendant's argument.

procedures are not binding on the court (*Id.*, pp. 2 and 4). *See Weise v. Syracuse University,* 522 F.2d 397, 413 (2d. Cir.1975) (finding that the court is not bound to accept the EEOC's determination as to the timeliness of a charge);[3] *Greenlees v. Eidenmuller Enterprises Inc.,* 32 F.3d 197, 200 (5th Cir.1994) (holding, in the context of the interpretation of the Title VII definition of employer, that the EEOC's interpretations are not controlling on the courts; "We cannot accept jurisdiction on the basis of the EEOC's belief that we should have jurisdiction when Congress has explicitly forbidden us from doing so.").[4]

Defendant also argues that this court should follow *Proffit v. Keycom Electronic Publishing,* 625 F.Supp. 400 (N.D.Ill.1985), in which the court rejected the plaintiff's argument that his unverified intake questionnaire should satisfy the 300–day requirement. The *Proffit* court relied on the language of Title VII which requires that a charge be signed under oath and held that "irrespective of EEOC's administrative view of the Intake Questionnaire, it does not satisfy the controlling statutory definition." *Id.,* at 403. The court further explained that the plaintiff's filing of the Intake Questionnaire did not initiate action by the EEOC, rather the EEOC initiated action on the underlying claim only after it received the plaintiff's formal charge of discrimination. *Id.,* at 404.

■ Despite defendant's persuasive argument, this court finds that plaintiff's timely filing of the EEOC questionnaire satisfies the 300–day requirement. Defendant has not produced any authority out of this circuit which supports its argument that the court should not be guided by the fact that the EEOC treated plaintiff's intake questionnaire as a formal charge for purposes of the 300–day requirement. This court does not believe that the Second Circuit's decision in *Weise* is sufficiently strong to defeat plaintiff's claim given that that decision is over

twenty years old, there have not been any recent Second Circuit decisions affirming the portion of *Weise* on which defendant relies, and the effect of the *Weise* court's decision not to accept the EEOC's determination as to the timeliness of a charge was to preserve a plaintiff's claim rather than to defeat the claim. The cases from this circuit that defendant has cited for support that the 300–day filing requirement must be strictly construed (*see* Item 7, pp. 8–9), and the cases from other circuits defendant has cited for support that the oath/verification requirement must be strictly enforced (Item 14, pp. 5–6) do not address equitable tolling in circumstances, such as those present in the instant case, where plaintiff alleges that he was advised by the local EEOC office that his questionnaire would satisfy the deadline.

The court has not found any published cases from this circuit which address similar circumstances. However, the Seventh Circuit has addressed a similar situation and found that it is appropriate in some cases to treat an intake questionnaire as a formal complaint for purposes of satisfying the 300–day requirement. In *Philbin v. General Electric Capital Auto Lease, Inc.,* 929 F.2d 321, 323 (7th Cir.1991), the Seventh Circuit held that an intake questionnaire which is later verified may be sufficient to constitute a charge in some circumstances. Perhaps the most important thing about the *Philbin* decision is that the Seventh Circuit expressly declined to follow *Proffit,* a case that had been decided by one of the district courts within the circuit and the case upon which defendant has most strongly relied.[5]

In *Philbin,* the plaintiff submitted a written and signed intake questionnaire to the EEOC within the statutory limit of filing a charge. The questionnaire was not signed under oath or affirmation. The EEOC assigned a charge number to the claim and

---

**3.** Although the case is relevant authority, in *Weise,* the court found that the district court's decision to adopt the EEOC's determination that a charge was not timely filed was improper. Thus, the Second Circuit's decision that the EEOC's finding was not binding on the courts resulted in the preservation of the plaintiff's claim, rather than the defeat of the claim.

**4.** This authority is not directly on point since the 300–day filing deadline is not a jurisdictional prerequisite.

**5.** Defendant has not addressed the existence or the significance of *Philbin* in any of its briefs or letters submitted in support of its motion.

mailed a Notice of Charge of Discrimination to the plaintiff's employer. Using the information on the intake questionnaire, the EEOC drafted a formal charge. That charge was sent to the plaintiff with instructions that she should sign it and return it within thirty days. The plaintiff complied with these instructions, and the EEOC sent a copy of the formal charge to the employer. *Id.,* at 322.

The Seventh Circuit first explained that in 29 C.F.R. § 1601.12(b) the EEOC stated that "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge.... Such amendments ... will relate back to the date of that the charge was first received." *Philbin,* 929 F.2d at 323. The court noted that several courts of appeals have held that the EEOC has the power to decide that a subsequent verification of a written statement relates back to the date of the initial filing and satisfies the statutory requirement. *See Peterson v. City of Wichita, Kansas,* 888 F.2d 1307 (10th Cir. 1989); *Price v. Southwestern Bell Telephone Co.,* 687 F.2d 74, 77–78 n. 3 (5th Cir.1982); *Casavantes v. California State University, Sacramento,* 732 F.2d 1441 (9th Cir.1984). The court then applied this reasoning to the circumstances of the case before it, and held that an intake questionnaire which is later verified may be sufficient to constitute a charge in some circumstances. *Philbin,* 929 F.2d at 323.

The Seventh Circuit also noted that employment discrimination statutes are remedial legislation which must be construed liberally, and therefore, courts should avoid technical interpretations of their procedural provisions which would defeat those remedial purposes. *Id.* Furthermore, the *Philbin* court explained that federal courts are bound to give substantial weight to the EEOC's interpretation of the statutes it administers, relying on the Supreme Court's decision in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Philbin,* 929 F.2d at 324. Noting that (1) the EEOC accepted the questionnaire and treated it as a charge, (2) the EEOC then notified the employer that a charge had been filed

against it, and (3) the intake questionnaire had been signed by the plaintiff, the court found that the totality of the circumstances fulfilled the purpose of the charge requirement, and thus the timely filing of the questionnaire was sufficient to satisfy the 300–day statute of limitations.

The court finds the reasoning of *Philbin* to be most persuasive. Most of the same factors that were present in *Philbin* are present in the case at bar. In both cases, the intake questionnaire was treated as a charge by the EEOC. The EEOC accepted the questionnaire and assigned a charge number to the claim. In both cases, the complainant signed the intake questionnaire. Although neither signature was made under oath or affirmation, the signing nevertheless provided an affirmation by each complainant of the allegations contained in their questionnaires. Finally, both complainants subsequently signed, under oath, the formal charge forms prepared by the EEOC. Although in *Philbin,* upon receipt of the intake questionnaire the EEOC notified the plaintiff's employer that a charge had been filed against it, the court does not believe that this one difference renders *Philbin* inapplicable to the circumstances present in this case. The totality of the circumstances still weigh in favor of the plaintiff.

In addition, the court fails to see how defendant has or will suffer any genuine prejudice by the court's finding that plaintiff's filing of his EEOC questionnaire within 300 days of the alleged discriminatory act was sufficient. Defendant is not in any worse of a position having received notice of plaintiff's charge a few days later. Defendant has neither alleged nor proven that it would have acted any differently if it had received notice of plaintiff's charge any earlier.

The parties disagree over the correct date plaintiff suffered the alleged harm. Plaintiff contends that the correct date is August 24, 1995 (Items 12 and 25). Defendant argues that the correct date is August 22, 1995, submitting that that is the date specified by plaintiff in his official EEOC charge (Item 7, p. 10). Defendant further argues that August 22, 1995, is the correct date, since that is

the date plaintiff requested reasonable accommodation for his alleged disability and since the Second Circuit has established that a claim accrues when the plaintiff first had notice of the alleged discriminatory action (Item 7, pp. 9–10). *See Van Zant,* 80 F.3d at 713. Ms. Cadle explains that the Buffalo Office considered August 24, 1995, to be the correct date because that is the date plaintiff indicated on his intake questionnaire (Item 22, ¶ 7).

Although whoever prepared the actual EEOC charge from plaintiff's questionnaire indicated that the date that the discriminatory action took place was August 22, 1995, plaintiff unambiguously stated on his new charge questionnaire that the date of harm was August 24, 1995 (Item 12, attachment p. 1). Since the normal custom and practice of the Buffalo Office at the time was to take the completed new charge questionnaire and, from its contents, draft the formal charge of discrimination (Item 22, ¶ 4), the court does not wish to penalize plaintiff for the EEOC's unexplained failure to identify August 24, 1995, as the date of harm when he so clearly specified that date on his intake questionnaire. Neither does the court wish to hold plaintiff responsible for failing to correct this error before signing the formal charge since plaintiff is not represented by counsel, nor is he experienced with such procedural requirements.

Furthermore, the court does not agree that August 22, 1995, is the date plaintiff had notice of the discriminatory action. Although that was the day that he requested reasonable accommodation from defendant, he did not receive defendant's response to this request until August 23 or August 24, and he did not resign from his production position until August 26, 1995. Consequently, if the court were to apply the "date of notice" standard suggested by defendant, then it appears as if August 26, 1995, is the correct date for when plaintiff's claim accrued. Nonetheless, the court will consider August 24, 1995, as the date of harm, since that is the date plaintiff has selected. Since August 24, 1995, was the date triggering plaintiff's 300–day clock and June 18, 1996, was the date plaintiff filed his charge of discrimination with the EEOC, plaintiff filed his charge on his 299th day.

### *CONCLUSION*

For the foregoing reasons, this court denies defendant's motion to dismiss plaintiff's claim for failure to file an EEOC charge within the 300–day statute of limitations (Item 6).

Plaintiff in this action has applied to the Court for appointment of counsel pursuant to 42 U.S.C. § 2000e–5(f)(1). Under 42 U.S.C. § 2000e–5(f)(1), the Court may appoint counsel "in such circumstances as the court may deem just." *See Jenkins v. Chemical Bank,* 721 F.2d 876 (2d Cir.1983); *see also* Local Rules of Civil Procedure 83.1(g). After reviewing the file and assessing the circumstances, the Court grants the plaintiff's request and appoints William A. Price, Esq., 655 Statler Towers, Buffalo, N.Y. 14202, as counsel for the plaintiff, *pro bono,* pursuant to 42 U.S.C. § 2000e–5(f)(1) and 28 U.S.C. § 1915. The Clerk of the Court is directed to copy the file in this matter and send it to Mr. Price, together with a copy of this order and the Guidelines Governing Reimbursement from the District Court Fund of Expenses Incurred by Court Appointed Counsel.

A telephone conference shall be held with counsel on January 6, 1998, at 3:30 p.m. to set a discovery or motion schedule.

So ordered.